WOLFF & SAMSON PC
THE OFFICES AT CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NEW JERSEY 07052
973-325-1500
David N. Ravin, Esq. (DNR-9289)
Robert Nies, Esq. (REN-3034)
*Attorneys for Triple Net Investments IX, LP*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| DJK RESIDENTIAL LLC, <u>et al.</u>, ) | |
| ) | Case No. 08-10375 (JMP) |
| Debtors. ) | |

### <u>NOTICE OF APPEAL</u>

Triple Net Investments IX, LP ("Triple Net"), by its undersigned counsel, Wolff &

Samson PC, hereby appeals, under 28 U.S.C. § 158(a) and Rules 8001(a) and 8002(a) of the

Federal Rules of Bankruptcy Procedures, from a FINAL ORDER UNDER 11 U.S.C. §§ 105,

361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) AND FED. R. BANKR.

P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION

FINANCING, (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, AND (III)

GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES (the

"Final DIP Financing Order")[1], dated February 29, 2008, and entered on the docket as Docket

No. 188 ( the "Order").

---

[1] The Final DIP Order subsumes and includes "Interim Order Under 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Parties and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)", (the "DIP Interim Order") Docket No. 52; and "Order Amending the Interim Order Under 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Fed. R. Bankr. P.

The names of the parties to the Order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

| **APPELLANT** | **COUNSEL:** |
|---|---|
| Triple Net Investments IX, LP | DAVID N. RAVIN, ESQ. |
| | ROBERT E. NIES, ESQ. |
| | Wolff & Samson PC |
| | The Offices At Crystal Lake |
| | One Boland Drive |
| | West Orange, NJ  07052 |
| | Telephone:  (973) 530-2012 |

| **APPELLEE** | **COUNSEL:** |
|---|---|
| DJK Residential LLC, et al., | MARK KIESEL STEIN, PC |
| | Kirkland Ellis LLP |
| | 200 East Randolph Drive |
| | Chicago, IL 60601 |
| | Tel:  (312) 861-2000 |
| | –and– |
| | RICHARD M. CIERI, ESQ. |
| | (RC – 6062) |
| | Kirkland Ellis, LLP |
| | 153 East 53rd Street |
| | New York, NY 10022 |
| | Tel:  (212) 446-4800 |

Dated:  New York, NY        WOLFF & SAMSON PC
        March 3, 2008        One Boland Drive
                                  West Orange, New Jersey, 07052
                                  (973) 530-2012
                                  *Attorneys for Triple Net Investments IX, LP*

                                By:  ___/s/ Robert E. Nies_____
                                      Robert E. Nies
                                      (RN-3034)

---

2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Parties and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) That was Entered by the Court on February 5, 2008 and Entered on the Docket as Item Number 52, (Such Order, the "Interim DIP Financing Order")", (the "Amended Interim Order"), Docket No. 140.

1116843.1

Richard M. Cieri (RC 6062)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022

Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

Marc Kieselstein, P.C. (*pro hac vice* pending)
Adam C. Paul (*pro hac vice* pending)
Scott R. Zemnick (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Counsel for the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 08-10375 (JMP) |
| DJK Residential LLC, et al.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND
364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POST-

---

[1]        The Debtors in these cases include: DJK Residential LLC; A Five Star Forwarding, Inc.; A Relocation Solutions Management Company; A Three Rivers Forwarding, Inc.; A.V.L. Transportation, Inc.; Alaska USA Van Lines, Inc.; Allied Alliance Forwarding, Inc.; Allied Continental Forwarding, Inc.; Allied Domestic Forwarding, Inc.; Allied Freight Forwarding, Inc.; Allied Intermodal Forwarding, Inc.; Allied International, N.A. Inc.; Allied Interstate Transportation, Inc.; Allied Transcontinental Forwarding, Inc.; Allied Transportation Forwarding, Inc.; Allied Van Lines Terminal Company; Allied Van Lines, Inc.; Allied Van Lines, Inc. of Indiana; Americas Quality Van Lines, Inc.; Anaheim Moving Systems, Inc.; Cartwright Moving & Storage Co., Inc.; Cartwright Van Lines, Inc.; City Storage & Transfer, Inc.; CMS Holding, LLC; Executive Relocation Corporation; Federal Traffic Service, Inc.; Fleet Insurance Management, Inc.; FrontRunner Worldwide, Inc.; Global Van Lines, Inc.; Global Worldwide, Inc.; Great Falls North American, Inc.; Lyon Van Lines, Inc.; Lyon Worldwide Shipping, Inc.; Manufacturing Support Services, LLC; Meridian Mobility Resources, Inc.; Move Management Services, Inc.; NA (UK) GP Corporation; NACAL, Inc.; NAVL LLC; NorAm Forwarding, Inc.; North American Forwarding, Inc.; North American International Holding Corporation; North American International N.A., Inc.; North American Logistics, Ltd.; North American Van Lines of Texas, Inc.; North American Van Lines, Inc.; Relocation Risk Solutions, LLC; RS Acquisition Holding, LLC; RS Acquisition, LLC; SIRVA Container Lines, Inc.; SIRVA Freight Forwarding, Inc.; SIRVA Global Relocation, Inc.; SIRVA Imaging Solutions, Inc.; SIRVA MLS, Inc.; SIRVA Relocation LLC; SIRVA Settlement of Alabama, LLC; SIRVA Settlement, Inc.; SIRVA Worldwide, Inc.; SIRVA, Inc.; Trident Transport International, Inc.

PETITION FINANCING, (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES

("FINAL DIP FINANCING ORDER")

Upon the motion, dated February 5, 2008 (the "Motion"), of SIRVA, Inc. ("Holding") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Cases") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

(I)    authorization for (a) SIRVA Worldwide, Inc. (the "Borrower") to obtain up to $150,000,000 of postpetition financing (the "DIP Financing") on the terms and conditions set forth in this Order and the Credit and Guarantee Agreement, dated as of February 6, 2008 (substantially in the form attached to the Motion as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Agreement"; together with all agreements, documents and instruments delivered or executed in connection therewith, the "DIP Documents"), among the Borrower, Holding and each of the direct and indirect domestic subsidiaries of Holding named therein (such subsidiaries, collectively with Holding, the "Guarantors"), JPMorgan Chase Bank, N.A. ("JPMCB"), as Administrative Agent (in such capacity, the "DIP Agent") for itself and a syndicate of other financial institutions (collectively, the "DIP Lenders"), to be arranged by J.P. Morgan Securities Inc. ("JPMorgan" and in such capacity, the "DIP Arranger"), and (b) the Guarantors to guaranty the Borrower's obligations in respect of the DIP Financing;

(II)    authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III)    authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 12 below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other

2

Prepetition Collateral (as defined in paragraph 3(d) below) and (b) provide adequate protection to the lenders (collectively, the "Prepetition Credit Facility Lenders") under the $600,000,000 Credit Agreement, dated as of December 1, 2003 (as amended, supplemented or otherwise modified, the "Prepetition Credit Facility"; and together with any other security, pledge or guaranty agreements and all other documentation executed in connection with any of the foregoing, the "Prepetition Loan Documents"), among the Borrower and the Guarantors party thereto, the Prepetition Credit Facility Lenders and JPMCB, as administrative agent (in such capacity, the "Prepetition Credit Facility Agent") for the Prepetition Credit Facility Lenders;

(IV)    authorization for the Debtors to pay in full with proceeds of the DIP Financing the aggregate amount of the 2008 Revolving Credit Loans, 2008 Swing Line Loans, 2008 Reimbursement Obligations and the New Term Loans (each as defined in the Prepetition Credit Facility and collectively, the "2008 Loans"), which payments constitute an "Extraordinary Provision" (an "Extraordinary Provision") under General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "General Order");

(V)    authorization for (a) the assumption by the reorganized Debtors on the effective date of the Reorganization Plan (as such term is defined in the DIP Agreement) of the loans and other obligations outstanding under the DIP Documents, (b) the granting of liens on, and security interests in, the property of certain of the reorganized Debtors to secure the obligations outstanding under, and the entry into, an exit facility agreement with the Borrower and the Guarantors, each as reorganized Debtors (the "Exit Facility Agreement"), from JPMorgan, as lead arranger and bookrunner (the "Exit Arranger"), JPMCB, as administrative agent (the "Exit Agent") and a syndicate of financial institutions party thereto (collectively, the "Exit Lenders") and (c) the payment of certain fees and the reimbursement of certain expenses to the Exit Arranger, the Exit Agent and the Exit Lenders;

(VI)    authorization for the DIP Agent to accelerate the Loans (unless defined in this Order, capitalized terms are used herein as defined in the DIP Agreement) and terminate the

3

Commitments under the DIP Agreement upon the occurrence and continuance of an Event of Default, including without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Debtors' assets having a value in excess of $500,000, each of which constitutes an Extraordinary Provision under the General Order;

(VII)    subject to and effective upon the entry of this Order, the waiver by the Debtors of any right to surcharge against the Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code, which constitutes an Extraordinary Provision under the General Order;

(VIII)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court on February 5, 2008 to consider entry of the proposed interim order annexed to the Motion (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement up to $100 million of Loans to be used for working capital and general corporate purposes of the Debtors and to pay in full the 2008 Loans (together with any accrued and unpaid interest thereon), (b) authorizing the Debtors to use the Cash Collateral, and (c) granting adequate protection to the Prepetition Credit Facility Lenders; and

(IX)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court on February 28, 2008 to consider entry of this order (the "Final Order") authorizing the Borrower on a final basis to continue to use the Cash Collateral and to borrow the balance of the Loans under the DIP Agreement, and authorizing and approving the relief requested in the Motion to become effective pursuant to this Order.

The Interim Hearing having been held by this Court on February 5, 2008 and an order granting the relief sought in the Motion (the "Interim Order") having been entered by the Court on such date and the notice requirements set forth in the Interim Order having been complied with and the Final Hearing having been held by this Court on February 28, 2008 at 10.00 a.m.

All objections to the entry of this Final Order having been overruled or withdrawn.

4

Upon the record made by the Debtors at the Interim Hearing and the Final Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion, the Interim Hearing, and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the local rules of this District.

3.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 19 and 20 below) the Debtors admit, stipulate, and agree that:

(a)    as of the Petition Date, the Debtors were indebted and liable to the Prepetition Credit Facility Lenders, without defense, of any kind, in the aggregate principal amount of approximately $511 million in respect of loans made by the Prepetition Credit Facility Lenders pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, plus accrued and unpaid interest thereon and fees and expenses (including fees and expenses of the Prepetition Credit Facility Agent's attorneys and financial advisors) and other obligations incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Credit Facility Obligations");

(b)    the Prepetition Credit Facility Obligations constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)    the Debtors do not have, and hereby forever release, any defenses whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and

5

(d)    the liens and security interests granted to the Prepetition Credit Facility Agent pursuant to and in connection with the Prepetition Loan Documents are (i) valid, binding, perfected, enforceable, first priority subject to permitted exceptions under the Prepetition Credit Facility, liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the Prepetition Loan Documents (together with the Cash Collateral, the "Prepetition Collateral"), (ii) subject and subordinate only to (A) after giving effect to this Order, the Carve Out (as defined in paragraph 6 below), (B) the liens and security interests granted to secure the DIP Financing and the Adequate Protection Obligations (as defined in paragraph 14 below), and (C) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent such permitted liens are senior to the liens of the Prepetition Credit Facility Agent on the Prepetition Collateral (the "Permitted Prepetition Liens").

4.    *Findings Regarding The DIP Financing.*

(a)    Good cause has been shown for the entry of this Final Order.

(b)    The Debtors require the remainder of the DIP Financing and need to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll, fund their moving and relocation obligations and satisfy other working capital and general corporate purposes of the Debtors. The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting the DIP Liens (as defined in paragraph 7 below) and the Superpriority Claims (as defined in paragraph 6 below) under the terms and conditions set forth in this Order and the DIP Documents.

6

(d)     The terms of the DIP Documents and the use of the Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all loans made to the Debtors pursuant to the DIP Agreement and (ii) all other obligations of the Debtors under the DIP Documents and this Order or in respect of overdrafts and related liabilities arising from treasury, depository and cash management services, or in connection with any automated clearing house transfers of funds, owing to any DIP Lenders or any of their respective banking affiliates (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent, the DIP Lenders and any such affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the final relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents is, therefore, in the best interest of the Debtors' estates.

5.     *Authorization Of The DIP Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized to enter into and perform under the DIP Documents and, in the case of the Borrower, to borrow and obtain letters of credit pursuant to the DIP Agreement and in accordance with the terms of this Order and the other DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Debtors and for other general corporate purposes of the Debtors, to make adequate protection payments to the Prepetition Credit

7

Facility Lenders in accordance with this Order, to pay interest, fees and expenses in connection with this Order and the DIP Documents and to repay in full the 2008 Loans and any accrued and unpaid interest thereon.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, and to the extent such actions have already occurred such actions are hereby ratified, and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)    the execution, delivery and performance of the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans, (B) increase the Commitments or the rate of interest payable on the Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein in any such case to be materially more restrictive;

(iii)    the non-refundable payment to the DIP Agent, the DIP Arranger, or the DIP Lenders, as the case may be, of the fees referred to in the Fee Letter, dated January 29, 2008, among Holding, JPMCB and the DIP Arranger, and the Incremental Commitment Letter, dated February 1, 2008, among Holding and the lenders party thereto, and the DIP Documents, and reasonable costs and expenses as may be due from time to time, including without limitation, fees and expenses of the professionals retained as provided in the DIP Documents; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable

8

or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

      6.     *Superpriority Claims.*

      (a)     Except to the extent expressly set forth in this Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof other than Avoidance Actions and the proceeds thereof. For the purposes of this Order, Avoidance Actions means the Debtors' claims and causes of action arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code.

      (b)     For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below), (ii) fees and expenses up to $250,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below), and (iii) following receipt of notice by the DIP Agent after the occurrence and during the continuance of an Event of Default under the DIP Agreement of the DIP Agent's intention to exercise remedies under the DIP Agreement (a "Trigger Notice"), the payment of accrued and unpaid professional fees and expenses incurred by the Debtors and any statutory committee appointed in the Cases (each, a "Committee") and allowed by the Court, in an aggregate amount not exceeding $5 million (plus all unpaid professional fees and

9

expenses allowed by this Court that were incurred prior to the giving of notice by the DIP Agent of the occurrence

of such Event of Default), <u>provided</u> that (x) the Carve Out shall not be available to pay any such professional fees

and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary

proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Lenders or the

Prepetition Credit Facility Agent, it being understood that, subject to section 20 below, the Carve Out may be

available to cover investigation and diligence professional fees and expenses for the Committee, (y) so long as no

Trigger Notice shall have been delivered the Carve Out shall not be reduced by the payment of fees and expenses

allowed by this Court and payable under Sections 328, 330 and 331 of the Bankruptcy Code, and (z) nothing in this

Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by

the Debtors' estates.

       7.     *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of the

Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security

agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or

the possession or control by the DIP Agent of any Collateral, the following security interests and liens are hereby

granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses

(a), (b) and (c) below being collectively referred to as the "<u>Collateral</u>"[1]), subject only to the Carve Out (all such liens

and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this

Order and the DIP Documents, the "<u>DIP Liens</u>"):

       (a)     <u>First Lien On Unencumbered Property.</u> Pursuant to section 364(c)(2) of the Bankruptcy

Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all

tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition

Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence

on or as of the Petition Date (collectively, the "<u>Unencumbered Property</u>"), including without limitation, any and all

unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, servicing

---

[1] With respect to the capital stock of any foreign subsidiaries of the Debtors, Collateral shall only include 66% of the voting stock of first tier foreign subsidiaries.

rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures,

machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license

agreements and other intellectual property, capital stock of the subsidiaries of Holding and the proceeds of all of the

foregoing, provided that, the Unencumbered Property shall not include the Avoidance Actions and any assets upon

which security may not be lawfully granted, nor shall it include any proceeds or property recovered in respect of any

Avoidance Actions and any assets upon which security may not be lawfully granted.

      (b)      Liens Junior To Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy

Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible

and intangible prepetition and postpetition property of the Debtors (other than the property described in paragraph

7(c), as to which the DIP Liens will be as described in such clause), whether now existing or hereafter acquired, that

is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and

unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as

permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent

and the DIP Lenders are junior to such valid, perfected and unavoidable liens.

      (c)      Liens Priming Prepetition Credit Facility Lenders' Liens.  Pursuant to section 364(d)(1)

of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien

on, and security interest in, all Prepetition Collateral.  The DIP Liens on the Prepetition Collateral shall be senior in

all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Credit Facility

Agent and the Prepetition Credit Facility Lenders (including, without limitation, the Adequate Protection Liens (as

defined in paragraph 14 below)), but shall be junior to any valid, perfected and unavoidable security interests in and

liens on the Prepetition Collateral that were senior to the liens of the Prepetition Credit Facility Agent and the

Prepetition Credit Facility Lenders as of the Petition Date or become subject after the Petition Date as permitted by

section 546(b) of the Bankruptcy Code.

      (d)      Liens Senior To Certain Other Liens.  The DIP Liens and the Adequate Protection Liens

shall not be (i) subject or subordinate to any liens arising after the Petition Date, including without limitation, any

liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission,

11

board or court for any liability of the Debtors, other than with respect to any liens or security interests arising after the Petition Date and permitted under the DIP Agreement to be senior to the DIP Liens or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

        8.     *Remedies After Event of Default.* The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuation of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against the Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and the giving of five business days' prior written notice to Holding (with a copy to counsel for any Committee and to the United States Trustee for the Southern District of New York), all rights and remedies against the Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives any right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Order or the DIP Documents; provided, however, that the Debtors' and the Committee's right (if any) to seek a marshalling of Collateral is expressly preserved. The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

        9.     *Limitation On Charging Expenses Against Collateral.* Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior

written consent of the DIP Agent, the requisite DIP Lenders, the Prepetition Credit Facility Agent or the requisite

Prepetition Credit Facility Lenders, as the case may be, and no such consent shall be implied from any other action,

inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition

Credit Facility Lenders, provided that this paragraph 9 shall not apply in any Case of any Debtor which was not an

obligor as of the Petition Date under the Prepetition Credit Facility and the rights of all parties in interest to seek

recovery, or oppose recovery, in each such Case under Section 506(c) of the Bankruptcy Code is fully preserved.

      10.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf

of the DIP Lenders or the Prepetition Credit Facility Agent on behalf of the Prepetition Credit Facility Lenders

pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any

claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or

based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the

Debtors) or 552(b) of the Bankruptcy Code.

      11.    *2008 Loans.*  The payment of (a) (i) the 2008 Revolving Credit Loans and 2008 Swing Line Loans

under the Prepetition Credit Facility outstanding in the aggregate principal amount of $45,300,000 as of the Petition

Date and (ii) the New Term Loans under the Prepetition Credit Facility outstanding in the aggregate principal

amount of $20,000,000 as of the Petition Date, together, in each case, with all accrued and unpaid interest thereon,

in full by the Debtors from proceeds of the DIP Financing, is hereby ratified.

      (b)    All payments of interest, principal or other amounts in respect of the 2008 Loans shall be

made to the Prepetition Credit Facility Agent, for the ratable benefit of the holders of the 2008 Loans, in accordance

with the terms of the applicable provisions of the Prepetition Credit Facility and provisions requiring notice or

minimum amounts in respect thereof shall not apply.

      12.    *The Cash Collateral.*  Substantially all of the Debtors' cash, including without limitation, all cash

and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Lender

other than cash in which the Cash Management Banks have an interest, and any cash proceeds of the disposition of

any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the

13

Prepetition Credit Facility Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

13.    *Use Of Prepetition Collateral (including Cash Collateral)*. The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date under the DIP Agreement for general corporate purposes in accordance with the terms and conditions of this Order, provided that, (a) the Prepetition Credit Facility Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

14.    *Adequate Protection*. The Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Credit Facility Agent's liens on the Prepetition Collateral by the DIP Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations"). As adequate protection, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders are hereby granted the following:

(a)    Adequate Protection Liens. As security for the payment of the Adequate Protection Obligations, the Prepetition Credit Facility Agent (for itself and for the benefit of the Prepetition Credit Facility Lenders) is hereby granted (effective and perfected as of the date of the Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the DIP Liens and any liens on the Collateral senior to such DIP Liens, and (iii) the Carve Out.

(b)    Section 507(b) Claim. The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all

14

administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claims"), subject and subordinate only to (i) the Carve Out, and (ii) the Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Order, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash. The 507(b) Claims shall not extend to Avoidance Actions or the proceeds thereof.

(c)    Interest, Fees, And Expenses. The Prepetition Credit Facility Agent shall receive from the Debtors (i) on the date of the closing of the DIP Agreement, all accrued and unpaid fees and expenses payable to or for the benefit of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders under the Prepetition Loan Documents, including without limitation, the reasonable fees and expenses owing to advisors for the Prepetition Credit Facility Agent, (ii) current cash payment of all reasonable fees and expenses payable to the Prepetition Credit Facility Agent under the Prepetition Loan Documents, including without limitation, the reasonable fees and disbursements of advisors to the Prepetition Credit Facility Agent and (iii) on the last day of each month, a payment calculated on the outstanding amount of the Prepetition Credit Facility Obligations (as of such day) calculated at the Eurodollar Rate plus 3.50% per annum. None of the fees and expenses payable pursuant to this paragraph 14(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the fees and expenses provided for in the preceding clause (ii) promptly after invoices for such fees and expenses shall have been submitted to the Debtors.

(d)    Information. The Debtors shall promptly provide to the Prepetition Credit Facility Agent any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders.

15

15.      *Reservation of Rights of Prepetition Credit Facility Lenders.* Based upon the consent of the Prepetition Credit Facility Lenders, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders pursuant hereto is without prejudice to the right of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the DIP Agent, any DIP Lender, the Prepetition Credit Facility Agent or any Prepetition Lender. The consent of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders to the priming of the Prepetition Credit Facility Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Financing and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

16.      *Conversion to Exit Facility Agreement.* (a)  Upon the satisfaction or waiver of the conditions precedent to effectiveness set forth in the Exit Facility Agreement (the "Conversion Date"), automatically and without further order of this Court, (i) the Borrower and Guarantors, each in their capacity as reorganized Debtors, shall be authorized to assume all obligations in respect of the loans and all other monetary obligations under the DIP Agreement, (ii) each loan under the DIP Agreement shall be deemed to have been continued as a loan under the Exit Facility Agreement, (iii) each DIP Lender shall be deemed to be an Exit Lender under the Exit Facility Agreement, (iv) the DIP Documents shall be deemed to have been superseded and replaced, and deemed amended and restated in the form of, the Exit Facility Agreement (with such changes satisfactory to the Exit Agent and the Borrower deemed incorporated as necessary to make such technical changes necessary to effectuate the intent of this paragraph 16) and (v) the commitments under the DIP Agreement shall be deemed to have been terminated.

16

Notwithstanding the foregoing, all obligations of the Borrower and the Guarantors to the DIP Agent, the DIP Arranger and the DIP Lenders under the DIP Agreement or any other DIP Document which are expressly stated in the DIP Agreement or such other DIP Document as surviving such agreement's termination shall, as so specified, survive without prejudice and remain in full force and effect as and to the extent set forth in paragraph 18(d) of this Order.

(b)    In accordance with the terms of this Order and the DIP Documents, any order entered by this Court confirming the Reorganization Plan (a "Confirmation Order") shall provide that upon the Conversion Date (i) the Debtors and the reorganized Debtors are authorized to execute and deliver the Exit Facility Agreement, all mortgages, security documents and all other related agreements, documents or instruments to be executed or delivered in connection therewith (collectively, the "Exit Facility Documents") and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Exit Facility Documents shall constitute the legal, valid and binding obligations of the reorganized Debtors parties thereto, enforceable in accordance with their respective terms, (iii) the Liens granted hereunder shall continue to secure all obligations under the Exit Facility Documents (unless otherwise stated in the Exit Facility Documents) and shall not be altered, amended or discharged by confirmation of the Reorganization Plan and shall be, and shall remain, legal, valid, perfected, non-voidable and binding liens on, and security interests in, all property and assets of the reorganized Debtors having the priority granted to them hereunder and (iv) no obligation, payment, transfer or grant of security under the Exit Facility Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim.  Such Confirmation Order shall further provide that the Debtors and the reorganized Debtors, as applicable, and the other persons granting any liens and security interests to secure the obligations under the Exit Facility Documents are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence of perfection of such liens and security interests under the provisions of any applicable federal, state, provincial or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of this Order and any such filings, recordings, approvals and consents shall not be required), and will thereafter cooperate to make

17

all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

       17.    *Perfection Of DIP Liens And Adequate Protection Liens.*

       (a)    The DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent on behalf of the DIP Lenders, the Prepetition Credit Facility Agent on behalf of the Prepetition Credit Facility Lenders shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

       (b)    A certified copy of this Order may, in the discretion of the DIP Agent or the Prepetition Credit Facility Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

       (c)    The Debtors shall execute and deliver to the DIP Agent and the Prepetition Credit Facility Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Credit Facility Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

       (d)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the

18

applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of postpetition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders or the Prepetition Credit Facility Lenders in accordance with the terms of the DIP Documents or this Order.

18.    *Preservation Of Rights Granted Under The Order.*

(a)    No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), the Commitments or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent and the Prepetition Credit Facility Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Credit Facility Agent, or (ii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens, shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in

19

interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

        (c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations, or any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Credit Facility Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations, and all Adequate Protection Obligations.

        (d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP

Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Section 507(b) Claims, the other administrative claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, and all Adequate Protection Obligations are indefeasibly paid in full in cash.

19.    *Effect Of Stipulations On Third Parties.*  The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 13 of this Order, shall be binding upon the Debtors and any successor thereto (including without limitation any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances. The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 13 of this Order, shall be binding on all parties in interest, including, without limitation, any official committee that may be appointed in these chapter 11 cases (the "Committee"), unless, and solely to the extent that, (a) the Committee or another party in interest files an objection to this Order challenging such stipulations and admissions, or other provisions, or otherwise requests standing to assert any claims or causes of action on behalf of the Debtors' estates against the Prepetition Credit Facility Agent or any of the Prepetition Credit Facility Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Loan Documents, the Prepetition Credit Facility Obligations or the Prepetition Collateral, in each case no later than March 18, 2008, and (b) the Court sustains such objection or otherwise grants such objecting party standing to pursue any such claims or causes of action on behalf of the Debtors at a hearing occurring no later than the date of confirmation of a plan of reorganization in any of the Cases. If no such objection or request is timely filed then, without further order of the Court, (x) the stipulations and admissions contained in this Order, including without limitation, paragraphs 3 and 13 of this Order, shall be binding on all parties in interest in the Cases and (y) the Prepetition Credit Facility Obligations, the Prepetition Credit Facility Agent's liens on the Prepetition Collateral and the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall not be subject to any other or further challenge with respect to the matters so stipulated and admitted by any Committee or any other party-in-interest, and any such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates with respect to such matters, including without

21

limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding, contested matter or standing request is timely filed, the stipulations and admissions contained in paragraphs 3 and 13 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding, contested matter or standing request. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, Claims and Defenses with respect to the Prepetition Loan Documents, the Prepetition Credit Facility Obligations or the Prepetition Credit Facility Agent's liens on the Prepetition Collateral. Notwithstanding anything in this Order to contrary, this paragraph 19 shall not operate to bind any Committee as to matters stipulated or admitted with respect any Prepetition Collateral unless the documentation evidencing such Prepetition Collateral shall have been delivered to Committee counsel on or before March 3, 2008 (or March 6, 2008 with respect to paragraph 12 stipulations).

20.    *Limitation On Use Of DIP Financing Proceeds And Collateral.* The Debtors shall use the proceeds of the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and in the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Agreement, Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Prepetition Loan Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Credit Facility Agent's assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit

22

Facility Lenders hereunder or under the DIP Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents, provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $75,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement, the Collateral or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Credit Facility Obligations or the Prepetition Credit Facility Agent's liens on the Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders. Notwithstanding anything to the contrary in this Order, subject to further Court order (i) in no event prior to the effective date of any plan of reorganization in any of the Cases will actual payments in respect of aggregate fees and expenses of all professional persons retained pursuant to an order of the Court by any Committee exceed $450,000 in the aggregate (the "Committee Budget"); and (ii) and the Prepetition Credit Facility Lenders shall have the right to seek to disallow any and all claims incurred by any Committee in excess of the Committee Budget, provided that, the Committee Budget shall not apply (x) if the Prepetition Credit Facility Lenders are paid in full under a confirmed plan of reorganization in the Cases or (y) to the extent of the value of any property (if any) not subject to a lien in favor of the Prepetition Lenders (including the lien herein granted to secure the Adequate Protection Obligations but only to the extent of the amount of the Adequate Protection Obligations).

21.      *Waiver of Claims and Causes of Action Against The DIP Agent and the DIP Lenders.*  Without prejudice to the rights of any other party, including any Committee (but subject to the limitations thereon in paragraphs 19 and 20), the Debtors have waived any and claims and causes of action against the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders, and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, related to the DIP Financing, this Order or the negotiation of the terms thereof.

22.      *Insurance.*  To the extent that JPMCB, in its role as Prepetition Credit Facility Agent under the Prepetition Loan Documents, is listed as loss payee under the Debtors' insurance policies, JPMCB, in its role as DIP

23

Agent under the DIP Agreement, is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Credit Facility Obligations.

23.    *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

24.    *Binding Effect; Successors And Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders, and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Credit Facility Agent, the DIP Lenders, and the Prepetition Credit Facility Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

25.    *Limitation of Liability.*  In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition Credit Facility Agent, the DIP Lenders and the Prepetition Credit Facility Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the

24

imposition upon the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

26.    *No Impact on Certain Contracts/ Transactions.*  No rights of any entity under Sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such Sections of the Bankruptcy Code.

27.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order. This Order shall supersede the Interim Order and shall be deemed effective as of the date and time of the Interim Order.

28.    *Objections Overruled.*  Any Objection which has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.

Dated:    February 29, 2008
          New York, New York

                                    *s/ James M. Peck*
                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

25

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-10375 (JMP) |
| DJK Residential LLC, et al., | Jointly Administered |
| Debtors. | |

**ORDER AMENDING THE INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c) THAT WAS ENTERED BY THE COURT ON FEBRUARY 5, 2008 AND ENTERED ON THE DOCKET AS ITEM NUMBER 52, (SUCH ORDER, THE "INTERIM DIP FINANCING ORDER")**

Upon consideration of Debtors' Emergency Motion to Amend the Interim Debtor-in-Possession Financing Order and the record of the hearing held in connection with such emergency motion on February 25, 2008 and upon the representation that interested counsel have approved the relief set forth herein, it is hereby ordered:

1.    Paragraph numbered 5(a) of the Interim DIP Financing Order[1] is hereby replaced and amended so that it provides as follows:

"Pending entry of the Final Order, the Debtors are hereby authorized to enter into the DIP Documents and, in the case of the Borrower, to borrow thereunder up to an aggregate principal amount of $100 million of the Loans for working capital and other general corporate purposes of the Debtors, including without limitation, to make adequate protection payments to the Prepetition Credit Facility Lenders in accordance with this Order and to pay interest, fees and expenses in connection with the DIP Financing and to repay in full the 2008 Loans and any accrued and unpaid interest thereon, provided that, between February 25, 2008 and the date that the Final Order is entered, the Borrower may borrow an additional $10

---

[1]    Defined terms used in this Order have the meanings given to such terms in the Interim DIP Financing Order.

million (up to an aggregate principal amount of $110 million) which additional $10 million amount may be used solely to make payments (i) to Agents and International Agents (as each such term is defined in the "Motion of the Debtors for an Order Authorizing, but not Directing, the Debtors to Pay Prepetition Transportation Expenses and Directing Banks and Other Financial Institutions to Honor Related Checks and Electronic Payment Requests" filed by Debtors on the Petition Date and having docket number 21), and (ii) under the Customer Programs and Practices (as such term is defined in the "Motion of the Debtors for Entry of an Order Authorizing but not Directing the Debtors to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue Certain Customer Programs and Practices in the Ordinary Course of Business " filed by the Debtors on the Petition Date and having docket number 20)."

2.    In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

3.    Other than as expressly set forth in this Order, the terms of the Interim DIP Financing Order remain in full force and effect.

Dated:    February 25, 2008
          New York, New York        s/ James M. Peck
                                    UNITED STATES BANKRUPTCY JUDGE

2



Richard M. Cieri (RC 6062)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

Marc Kieselstein, P.C. (*pro hac vice* pending)
Adam C. Paul (*pro hac vice* pending)
Scott R. Zemnick (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Proposed Counsel for the Debtors and Debtors in
Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-10375 (JMP) |
| DJK Residential LLC, et al.,[1] | Jointly Administered |
| Debtors. | |

INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND
364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POST-
PETITION FINANCING, (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (III) GRANTING

---

[1]       The Debtors in these cases include:  DJK Residential LLC; A Five Star Forwarding, Inc.; A
Relocation Solutions Management Company; A Three Rivers Forwarding, Inc.; A.V.L. Transportation, Inc.; Alaska
USA Van Lines, Inc.; Allied Alliance Forwarding, Inc.; Allied Continental Forwarding, Inc.; Allied Domestic
Forwarding, Inc.; Allied Freight Forwarding, Inc.; Allied Intermodal Forwarding, Inc.; Allied International, N.A.
Inc.; Allied Interstate Transportation, Inc.; Allied Transcontinental Forwarding, Inc.; Allied Transportation
Forwarding, Inc.; Allied Van Lines Terminal Company; Allied Van Lines, Inc.; Allied Van Lines, Inc. of Indiana;
Americas Quality Van Lines, Inc.; Anaheim Moving Systems, Inc.; Cartwright Moving & Storage Co., Inc.;
Cartwright Van Lines, Inc.; City Storage & Transfer, Inc.; CMS Holding, LLC; Executive Relocation Corporation;
Federal Traffic Service, Inc.; Fleet Insurance Management, Inc.; FrontRunner Worldwide, Inc.; Global Van Lines,
Inc.; Global Worldwide, Inc.; Great Falls North American, Inc.; Lyon Van Lines, Inc.; Lyon Worldwide Shipping,
Inc.; Manufacturing Support Services, LLC; Meridian Mobility Resources, Inc.; Move Management Services, Inc.;
NA (UK) GP Corporation; NACAL, Inc.;  NAVL LLC; NorAm Forwarding, Inc.; North American Forwarding,
Inc.; North American International Holding Corporation; North American International N.A., Inc.; North American
Logistics, Ltd.; North American Van Lines of Texas, Inc.; North American Van Lines, Inc.; Relocation Risk
Solutions, LLC; RS Acquisition Holding, LLC; RS Acquisition, LLC; SIRVA Container Lines, Inc.; SIRVA Freight
Forwarding, Inc.; SIRVA Global Relocation, Inc.; SIRVA Imaging Solutions, Inc.; SIRVA MLS, Inc.; SIRVA
Relocation LLC; SIRVA Settlement of Alabama, LLC; SIRVA Settlement, Inc.; SIRVA Worldwide, Inc.; SIRVA,
Inc.; Trident Transport International, Inc.

ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (IV) SCHEDULING A FINAL
HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

("INTERIM DIP FINANCING ORDER")

Upon the motion, dated February 5, 2008 (the "Motion"), of SIRVA, Inc. ("Holding") and its affiliated

debtors, each as debtor and debtor-in-possession (collectively, the "Debtors") in the above-captioned cases (the

"Cases") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1)

and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"),

and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy

Rules"), seeking:

(I)        authorization for (a) SIRVA Worldwide, Inc. (the "Borrower") to obtain up to

$150,000,000 of postpetition financing (the "DIP Financing") on the terms and conditions set forth

in this Order and the Credit and Guarantee Agreement, to be dated as of February 6, 2008

(substantially in the form attached to the Motion as Exhibit A, and as hereafter amended,

supplemented or otherwise modified from time to time in accordance with the terms hereof and

thereof, the "DIP Agreement"; together with all agreements, documents and instruments delivered

or executed in connection therewith, the "DIP Documents"), among the Borrower, Holding and

each of the direct and indirect domestic subsidiaries of Holding named therein (such subsidiaries,

collectively with Holding, the "Guarantors"), JPMorgan Chase Bank, N.A. ("JPMCB"), as

Administrative Agent (in such capacity, the "DIP Agent") for itself and a syndicate of other

financial institutions (collectively, the "DIP Lenders"), to be arranged by J.P. Morgan Securities

Inc. ("JPMorgan" and in such capacity, the "DIP Arranger"), and (b) the Guarantors to guaranty

the Borrower's obligations in respect of the DIP Financing;

(II)       authorization for the Debtors to execute and deliver the DIP Agreement and the

other DIP Documents and to perform such other and further acts as may be necessary or

appropriate in connection therewith;

(III)      authorization for the Debtors to (a) use the Cash Collateral (as defined in

paragraph 12 below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other

Prepetition Collateral (as defined in paragraph 3(d) below) and (b) provide adequate protection to

2

the lenders (collectively, the "<u>Prepetition Credit Facility Lenders</u>") under the $600,000,000 Credit

Agreement, dated as of December 1, 2003 (as amended, supplemented or otherwise modified, the

"<u>Prepetition Credit Facility</u>"; and together with any other security, pledge or guaranty agreements

and all other documentation executed in connection with any of the foregoing, the "<u>Prepetition</u>

<u>Loan Documents</u>"), among the Borrower and the Guarantors party thereto, the Prepetition Credit

Facility Lenders and JPMCB, as administrative agent (in such capacity, the "<u>Prepetition Credit</u>

<u>Facility Agent</u>") for the Prepetition Credit Facility Lenders;

      (IV)    subject to entry of this Order, authorization for the Debtors to pay in full with

proceeds of the DIP Financing the aggregate amount of the 2008 Revolving Credit Loans, 2008

Swing Line Loans, 2008 Reimbursement Obligations and the New Term Loans (each as defined in

the Prepetition Credit Facility and collectively, the "<u>2008 Loans</u>"), which payments constitute an

"Extraordinary Provision" (an "<u>Extraordinary Provision</u>") under General Order No. M-274 of the

United States Bankruptcy Court for the Southern District of New York (the "<u>General Order</u>");

      (V)    authorization for (a) the assumption by the reorganized Debtors on the effective

date of the Reorganization Plan (as such term is defined in the DIP Agreement) of the loans and

other obligations outstanding under the DIP Documents, (b) the granting of liens on, and security

interests in, the property of certain of the reorganized Debtors to secure the obligations

outstanding under, and the entry into, an exit facility agreement with the Borrower and the

Guarantors, each as reorganized Debtors (the "<u>Exit Facility Agreement</u>"), from JPMorgan, as lead

arranger and bookrunner (the "<u>Exit Arranger</u>"), JPMCB, as administrative agent (the "<u>Exit</u>

<u>Agent</u>") and a syndicate of financial institutions party thereto (collectively, the "<u>Exit Lenders</u>")

and (c) the payment of certain fees and the reimbursement of certain expenses to the Exit

Arranger, the Exit Agent and the Exit Lenders;

      (VI)    authorization for the DIP Agent to accelerate the Loans (unless defined in this

Order, capitalized terms are used herein as defined in the DIP Agreement) and terminate the

Commitments under the DIP Agreement upon the occurrence and continuance of an Event of

Default, including without limitation, upon the entry of an order or orders granting relief from the

automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Debtors'

assets having a value in excess of $500,000, each of which constitutes an Extraordinary Provision under the General Order;

(VII)    subject to entry of the Final Order, authorization to grant liens on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"), which grant constitutes an Extraordinary Provision under the General Order;

(VIII)    subject to entry of the Final Order, the waiver by the Debtors of any right to surcharge against the Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code, which constitutes an Extraordinary Provision under the General Order;

(IX)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement up to $100 million of Loans to be used for working capital and general corporate purposes of the Debtors and to pay in full the 2008 Loans (together with any accrued and unpaid interest thereon), (b) authorizing the Debtors to use the Cash Collateral, and (c) granting adequate protection to the Prepetition Credit Facility Lenders; and

(X)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Borrower on a final basis to continue to use the Cash Collateral and to borrow the balance of the Loans under the DIP Agreement, and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order.

The Interim Hearing having been held by this Court on February 5, 2008 and upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

4

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases commenced on February 5, 2008 (the "Petition Date"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on their thirty largest (on a consolidated basis) unsecured creditors, the cash management banks with whom the Debtors maintain deposit, lockbox, concentration, disbursement and similar accounts (the "Cash Management Banks"), the Prepetition Credit Facility Agent, counsel to the Prepetition Credit Facility Agent, the DIP Agent, counsel to the DIP Agent, the United States Trustee for the Southern District of New York, Washington Mutual Bank and Colonial Bank, N.A., lenders to Holdings' non-debtor subsidary, SIRVA Mortgage, Inc., counsel to LaSalle Bank, N.A., as agent for the Debtors' receivables purchase program maintained through SIRVA Relocation Credit, LLC, the Debtors' non-debtor affiliate, the Internal Revenue Service, and the Securities and Exchange Commission.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 19 and 20 below) the Debtors admit, stipulate, and agree that:

(a)      as of the Petition Date, the Debtors were indebted and liable to the Prepetition Credit Facility Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $511,000 in respect of loans made by the Prepetition Credit Facility Lenders pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, plus accrued and unpaid interest thereon and fees and expenses (including fees and expenses of the Prepetition Credit Facility Agent's attorneys and financial advisors) and other obligations incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Credit Facility Obligations");

(b)      the Prepetition Credit Facility Obligations constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)      (i) no portion of the Prepetition Credit Facility Obligations is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and

5

(ii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and

(d)     the liens and security interests granted to the Prepetition Credit Facility Agent pursuant to and in connection with the Prepetition Loan Documents are (i) valid, binding, perfected, enforceable, first priority subject to permitted exceptions under the Prepetition Credit Facility, liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the Prepetition Loan Documents (together with the Cash Collateral, the "Prepetition Collateral"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve Out (as defined in paragraph 6 below), (B) the liens and security interests granted to secure the DIP Financing and the Adequate Protection Obligations (as defined in paragraph 14 below), and (C) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent such permitted liens are senior to the liens of the Prepetition Credit Facility Agent on the Prepetition Collateral (the "Permitted Prepetition Liens").

4.     *Findings Regarding The DIP Financing.*

(a)     Good cause has been shown for the entry of this Order.

(b)     The Debtors have an immediate need to obtain the DIP Financing and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll, fund their moving and relocation obligations and satisfy other working capital and general corporate purposes of the Debtors. The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting the DIP Liens

6

(as defined in paragraph 7 below) and the Superpriority Claims (as defined in paragraph 6 below) under the terms and conditions set forth in this Order and the DIP Documents.

        (d)      The terms of the DIP Documents and the use of the Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

        (e)      The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all loans made to the Debtors pursuant to the DIP Agreement and (ii) all other obligations of the Debtors under the DIP Documents, this Order or in respect of overdrafts and related liabilities arising from treasury, depository and cash management services, or in connection with any automated clearing house transfers of funds, owing to any DIP Lenders or any of their respective banking affiliates (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent, the DIP Lenders and any such affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

        (f)      The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the interim relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

        5.      *Authorization Of The DIP Financing And The DIP Documents.*

        (a)      Pending entry of the Final Order, the Debtors are hereby authorized to enter into the DIP Documents and, in the case of the Borrower, to borrow thereunder up to an aggregate principal amount of $100 million of the Loans for working capital and other general corporate purposes of the Debtors, including without limitation, to make adequate protection payments to the Prepetition Credit Facility Lenders in accordance with this

Order and to pay interest, fees and expenses in connection with the DIP Financing and to repay in full the 2008 Loans and any accrued and unpaid interest thereon.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)    the execution, delivery and performance of the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans, (B) increase the Commitments or the rate of interest payable on the Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein in any such case to be materially more restrictive;

(iii)    the non-refundable payment to the DIP Agent, the DIP Arranger, or the DIP Lenders, as the case may be, of the fees referred to in the Fee Letter, dated January 29, 2008, among Holding, JPMCB and the DIP Arranger, and the Incremental Commitment Letter, dated February 1, 2008, among Holding and the lenders party thereto, and the DIP Documents, and reasonable costs and expenses as may be due from time to time, including without limitation, fees and expenses of the professionals retained as provided in the DIP Documents; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or

8

under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute
or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

      6.      *Superpriority Claims.*

      (a)      Except to the extent expressly set forth in this Order in respect of the Carve Out, pursuant
to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior
administrative claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative
expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of
any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections
503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising
under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code,
whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy
or attachment, which Superpriority Claims shall be payable from and have recourse to all prepetition and
postpetition property of the Debtors and all proceeds thereof.

      (b)      For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the
Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the
United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below), (ii) fees
and expenses up to $250,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to
the notice set forth in (iii) below), and (iii) following receipt of notice by the DIP Agent after the occurrence and
during the continuance of an Event of Default under the DIP Agreement, the payment of accrued and unpaid
professional fees and expenses incurred by the Debtors and any statutory committee appointed in the Cases (each, a
"Committee") and allowed by the Court, in an aggregate amount not exceeding $5 million (plus all unpaid
professional fees and expenses allowed by this Court that were incurred prior to the giving of notice by the DIP
Agent of the occurrence of such Event of Default), provided that (x) the Carve Out shall not be available to pay any
such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes
of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Credit
Facility Lenders or the Prepetition Credit Facility Agent, it being understood that, subject to section 20 below, the
Carve Out may be available to cover investigation and diligence professional fees and expenses for the Committee,
(y) so long as an Event of Default shall not have occurred and be continuing, the Carve Out shall not be reduced by

9

the payment of fees and expenses allowed by this Court and payable under Sections 328, 330 and 331 of the Bankruptcy Code, and (z) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

       7.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any Collateral, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Collateral"[1]), subject only to the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"):

       (a)    First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of Holding and the proceeds of all of the foregoing, provided that, the Unencumbered Property shall not include the Avoidance Actions and any assets upon which security may not be lawfully granted, but subject to the entry of the Final Order, Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions and any assets upon which security may not be lawfully granted.

---

[1] With respect to the capital stock of any foreign subsidiaries of the Debtors, Collateral shall only include 66% of the voting stock of first tier foreign subsidiaries.

(b)      <u>Liens Junior To Certain Existing Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than the property described in paragraph 7(c), as to which the DIP Liens will be as described in such clause), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders are junior to such valid, perfected and unavoidable liens.

(c)      <u>Liens Priming Prepetition Credit Facility Lenders' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders (including, without limitation, the Adequate Protection Liens (as defined in paragraph 14 below)), but shall be junior to any valid, perfected and unavoidable security interests in and liens on the Prepetition Collateral that were senior to the liens of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders as of the Petition Date or become subject after the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(d)      <u>Liens Senior To Certain Other Liens</u>. The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, other than with respect to any liens or security interests arising after the Petition Date and permitted under the DIP Agreement to be senior to the DIP Liens or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

8.      *Remedies After Event of Default*. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuation of an Event of Default, all rights and remedies under

11

the DIP Documents, other than those rights and remedies against the Collateral as provided in clause (ii) below, and

(ii) upon the occurrence and during the continuance of an Event of Default, and the giving of five business days'

prior written notice to Holding (with a copy to counsel for any Committee and to the United States Trustee for the

Southern District of New York), all rights and remedies against the Collateral provided for in the DIP Documents

and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with

the DIP Agent or any DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that

may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is

continuing, and each of the Debtors hereby waives any right to seek relief, including without limitation, under

section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and

remedies of the DIP Agent or the DIP Lenders set forth in this Order or the DIP Documents. In no event shall the

DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders be

subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The DIP

Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order

shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise,

unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP

Agreement.

9.    *Limitation On Charging Expenses Against Collateral.*  Subject to and effective upon entry of the

Final Order, except to the extent of the Carve Out, no expenses of administration of the Cases or any future

proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the

Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the

Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the requisite

DIP Lenders, the Prepetition Credit Facility Agent or the requisite Prepetition Credit Facility Lenders, as the case

may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the

DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders.

10.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf

of the DIP Lenders or the Prepetition Credit Facility Agent on behalf of the Prepetition Credit Facility Lenders

pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any

claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or

12

based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

11.    *2008 Loans.* (a) Subject to and effective upon the entry of this Order, (i) the 2008 Revolving Credit Loans and 2008 Swing Line Loans under the Prepetition Credit Facility outstanding in the aggregate principal amount of $45,300,000 as of the Petition Date and (ii) the New Term Loans under the Prepetition Credit Facility outstanding in the aggregate principal amount of $20,000,000 as of the Petition Date, together, in each case, with all accrued and unpaid interest thereon, shall be paid in full by the Debtors from proceeds of the DIP Financing.

(b)    All payments of interest, principal or other amounts in respect of the 2008 Loans shall be made to the Prepetition Credit Facility Agent, for the ratable benefit of the holders of the 2008 Loans, in accordance with the terms of the applicable provisions of the Prepetition Credit Facility and provisions requiring notice or minimum amounts in respect thereof shall not apply.

12.    *The Cash Collateral.* Substantially all of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Lender other than cash in which the Cash Management Banks have an interest, and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Credit Facility Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

13.    *Use Of Prepetition Collateral (including Cash Collateral).* The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date under the DIP Agreement for general corporate purposes in accordance with the terms and conditions of this Order, provided that, (a) the Prepetition Credit Facility Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

14.    *Adequate Protection.* The Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other

13

Prepetition Collateral, the priming of the Prepetition Credit Facility Agent's liens on the Prepetition Collateral by the DIP Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations"). As adequate protection, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders are hereby granted the following:

(a)      Adequate Protection Liens. As security for the payment of the Adequate Protection Obligations, the Prepetition Credit Facility Agent (for itself and for the benefit of the Prepetition Credit Facility Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the DIP Liens and any liens on the Collateral senior to such DIP Liens, and (iii) the Carve Out.

(b)      Section 507(b) Claim. The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claims"), subject and subordinate only to (i) the Carve Out, and (ii) the Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Order, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.

(c)      Interest, Fees, And Expenses. The Prepetition Credit Facility Agent shall receive from the Debtors (i) on the date of the closing of the DIP Agreement, all accrued and unpaid fees and expenses payable to or for the benefit of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders under the Prepetition Loan Documents, including without limitation, the reasonable fees and expenses owing to advisors for the Prepetition Credit Facility Agent, (ii) current cash payment of all reasonable fees and expenses payable to the Prepetition Credit Facility Agent under the Prepetition Loan Documents, including without limitation, the reasonable fees and disbursements of advisors to the Prepetition Credit Facility Agent and (iii) on the last day of

14

each month, a payment calculated on the outstanding amount of the Prepetition Credit Facility Obligations (as of such day) calculated at the Eurodollar Rate plus 3.50% per annum. None of the fees and expenses payable pursuant to this paragraph 14(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the fees and expenses provided for in the preceding clause (ii) promptly after invoices for such fees and expenses shall have been submitted to the Debtors.

(d)    Information. The Debtors shall promptly provide to the Prepetition Credit Facility Agent any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders.

15.    *Reservation of Rights of Prepetition Credit Facility Lenders.* Based upon the consent of the Prepetition Credit Facility Lenders, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders pursuant hereto is without prejudice to the right of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the DIP Agent, any DIP Lender, the Prepetition Credit Facility Agent or any Prepetition Lender. The consent of the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders to the priming of the Prepetition Credit Facility Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Financing and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

16.    *Conversion to Exit Facility Agreement.* (a)   Upon the satisfaction or waiver of the conditions precedent to effectiveness set forth in the Exit Facility Agreement (the "Conversion Date"), automatically and

15

without further order of this Court, (i) the Borrower and Guarantors, each in their capacity as reorganized Debtors, shall be authorized to assume all obligations in respect of the loans and all other monetary obligations under the DIP Agreement, (ii) each loan under the DIP Agreement shall be deemed to have been continued as a loan under the Exit Facility Agreement, (iii) each DIP Lender shall be deemed to be an Exit Lender under the Exit Facility Agreement, (iv) the DIP Documents shall be deemed to have been superseded and replaced, and deemed amended and restated in the form of, the Exit Facility Agreement (with such changes satisfactory to the Exit Agent and the Borrower deemed incorporated as necessary to make such technical changes necessary to effectuate the intent of this paragraph 16) and (v) the commitments under the DIP Agreement shall be deemed to have been terminated. Notwithstanding the foregoing, all obligations of the Borrower and the Guarantors to the DIP Agent, the DIP Arranger and the DIP Lenders under the DIP Agreement or any other DIP Document which are expressly stated in the DIP Agreement or such other DIP Document as surviving such agreement's termination shall, as so specified, survive without prejudice and remain in full force and effect as and to the extent set forth in paragraph 18(d) of this Order.

(b)    In accordance with the terms of this Order and the DIP Documents, any order entered by this Court confirming the Reorganization Plan (a "Confirmation Order") shall provide that upon the Conversion Date (i) the Debtors and the reorganized Debtors are authorized to execute and deliver the Exit Facility Agreement, all mortgages, security documents and all other related agreements, documents or instruments to be executed or delivered in connection therewith (collectively, the "Exit Facility Documents") and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Exit Facility Documents shall constitute the legal, valid and binding obligations of the reorganized Debtors parties thereto, enforceable in accordance with their respective terms, (iii) the Liens granted hereunder shall continue to secure all obligations under the Exit Facility Documents (unless otherwise stated in the Exit Facility Documents) and shall not be altered, amended or discharged by confirmation of the Reorganization Plan and shall be, and shall remain, legal, valid, perfected, non-voidable and binding liens on, and security interests in, all property and assets of the reorganized Debtors having the priority granted to them hereunder and (iv) no obligation, payment, transfer or grant of security under the Exit Facility Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim.  Such Confirmation Order shall further provide that the

16

Debtors and the reorganized Debtors, as applicable, and the other persons granting any liens and security interests to secure the obligations under the Exit Facility Documents are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence of perfection of such liens and security interests under the provisions of any applicable federal, state, provincial or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of this Order and any such filings, recordings, approvals and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

      17.    *Perfection Of DIP Liens And Adequate Protection Liens.*

      (a)    The DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders, the Prepetition Credit Facility Agent on behalf of the Prepetition Credit Facility Lenders shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

      (b)    A certified copy of this Order may, in the discretion of the DIP Agent or the Prepetition Credit Facility Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

      (c)    The Debtors shall execute and deliver to the DIP Agent and the Prepetition Credit Facility Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Credit Facility Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

(d)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of postpetition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders or the Prepetition Credit Facility Lenders in accordance with the terms of the DIP Documents or this Order.

18.    *Preservation Of Rights Granted Under The Order.*

(a)    No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), the Commitments or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent and the Prepetition Credit Facility Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Credit Facility Agent, or (ii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the DIP Liens and the Adequate Protection Liens, shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Order, the

DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

        (c)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations, or any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Credit Facility Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations, and all Adequate Protection Obligations.

        (d)    Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superiority Claims, the Section 507(b) Claims, the

other administrative claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, and all Adequate Protection Obligations are indefeasibly paid in full in cash.

19.    *Effect Of Stipulations On Third Parties.*  The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 13 of this Order, shall be binding upon the Debtors and any successor thereto (including without limitation any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances. The stipulations and admissions contained in this Order, including without limitation, in paragraphs 3 and 13 of this Order, shall be binding on all parties in interest, including, without limitation, any official committee that may be appointed in these chapter 11 cases (the "Committee"), unless, and solely to the extent that, (a) the Committee or another party in interest files an objection to this Order challenging such stipulations, admissions, releases or other provisions, or otherwise requests standing to assert any claims or causes of action on behalf of the Debtors' estates against the Prepetition Credit Facility Agent or any of the Prepetition Credit Facility Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Loan Documents, the Prepetition Credit Facility Obligations or the Prepetition Collateral, in each case no later than twenty (20) days after the formation of any Committee, but in no case to be later than the date of confirmation of a plan of reorganization in any of the Cases, and (b) the Court sustains such objection or otherwise grants such objecting party standing to pursue any such claims or causes of action on behalf of the Debtors at a hearing occurring no later than thirty (30) days after the formation of any Committee but in no case to be later than the date of confirmation of a plan of reorganization in any of the Cases. If no such objection or request is timely filed then, without further order of the Court, (x) the Prepetition Credit Facility Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the Prepetition Credit Facility Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(d), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Credit Facility Obligations, the Prepetition Credit Facility Agent's liens on the Prepetition Collateral and the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders shall not be subject to any other or further

20

challenge by any Committee or any other party-in-interest, and any such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding, contested matter or standing request is timely filed, the stipulations and admissions contained in paragraphs 3 and 13 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding, contested matter or standing request. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, Claims and Defenses with respect to the Prepetition Loan Documents, the Prepetition Credit Facility Obligations or the Prepetition Credit Facility Agent's liens on the Prepetition Collateral.

20.    *Limitation On Use Of DIP Financing Proceeds And Collateral.*  The Debtors shall use the proceeds of the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and in the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Agreement, Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Prepetition Loan Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Credit Facility Agent's assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders hereunder or under the DIP Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii)

permitted under the DIP Documents, provided that, notwithstanding anything to the contrary herein, no more than an

aggregate of $50,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement,

the Collateral or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority

of the Prepetition Credit Facility Obligations or the Prepetition Credit Facility Agent's liens on the Prepetition

Collateral or investigate any Claims and Defenses or other causes action against the Prepetition Credit Facility

Agent or the Prepetition Credit Facility Lenders.

        21.     *Waiver of Claims and Causes of Action Against The DIP Agent and the DIP Lenders.* Without

prejudice to the rights of any other party, including any Committee (but subject to the limitations thereon in

paragraphs 19 and 20), the Debtors have waived any and claims and causes of action against the DIP Agent, the DIP

Lenders, the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders, and their respective agents,

affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, related to the DIP Financing, this

Order or the negotiation of the terms thereof.

        22.     *Insurance.* To the extent that JPMCB, in its role as Prepetition Credit Facility Agent under the

Prepetition Loan Documents, is listed as loss payee under the Debtors' insurance policies, JPMCB, in its role as DIP

Agent under the DIP Agreement, is also deemed to be the loss payee under the Debtors' insurance policies and shall

act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first,

to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Credit Facility

Obligations.

        23.     *Order Governs.* In the event of any inconsistency between the provisions of this Order and the

DIP Documents, the provisions of this Order shall govern.

        24.     *Binding Effect; Successors And Assigns.* The DIP Documents and the provisions of this Order,

including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation,

the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders, any

Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11

trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to

section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the

Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP

Agent, the DIP Lenders, the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders, and the

Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Credit Facility Agent, the DIP Lenders, and the Prepetition Credit Facility Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

25.    *Limitation of Liability.*  In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition Credit Facility Agent, the DIP Lenders and the Prepetition Credit Facility Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

26.    *No Impact on Certain Contracts/ Transactions.*  No rights of any entity under Sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such Sections of the Bankruptcy Code.

27.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.

28.    *Final Hearing.*  The Final Hearing is scheduled for February 25, 2008 at 10:00 a.m., prevailing Eastern time, before this Court.

The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing, including without limitation, notice of the Extraordinary Provisions described in the introductory language to this Order) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Kirkland & Ellis LLP, 200 East

23

Randolph Drive, Chicago, Illinois 60601, Attention: Marc Kieselstein, Esq., Adam Paul, Esq. and Scott Zemnick,

Esq. attorneys for the Debtors; (b) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York

10017, Attention: Peter V. Pantaleo, Esq., David J. Mack, Esq. and Jennifer L. Marines, Esq., attorneys for the

Prepetition Credit Facility Agent and for the DIP Agent, and (c) the Office of the United States Trustee for the

Southern District of New York, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern

District of New York, in each case to allow actual receipt by the foregoing no later than February 21, 2008 at 4:00

p.m., prevailing Eastern time.

Dated:     February 5, 2008
           New York, New York

                              *s/ James M. Peck*
                              UNITED STATES BANKRUPTCY JUDGE

24